Please be seated. There are two matters before the court this morning. The appellant will have 15 minutes. Please remember to save some time if you choose to have a rebuttal. And please do not be repetitive. We are familiar with your briefs. Call the first case. 090629 Board of Education, Proviso Township High School District 209 v. Gregory T. Jackson May it please the court, counsel, good morning. My name is Austin Zimmer. I represent the appellant in this matter, the Board of Education, Proviso Township High School District 209. And first off, thank you for the opportunity to be able to argue our case in front of you today. And we really have one issue that's presented for review today. And that's whether the circuit court erred in not finding that the Fourth Amendment to the superintendent's contract violated Section 10-23.8 of the Illinois School Code. Now, my client is seeking to overrule the Tri-Courts decision and declare the Fourth Amendment to the superintendent's original agreement null and void, primarily for two important reasons. And the first reason is that the Fourth Amendment... Counsel, can I interrupt for just a millisecond? Why don't we take a look preliminarily at what the code actually provides? Sure. I'd be happy to do that. The superintendent's contract is governed by 10-23.8. And it was enacted into law on January 1st, 1998. So this is the first time this Court's had an opportunity to interpret that statute. And what happened is the legislature determined that any superintendent contract that's over one year, what we have here, has to be a performance-based contract. And the performance-based contract has to be linked specifically to student performance and academic improvement. Now, to determine that, there has to be both goals and indicators of student performance and academic improvement in the contract. And then specifically, before such a contract can be rolled over or extended prior to its scheduled expiration date, there has to be a finding by the school board that all goals in the prior contract were met. And to help with that discussion, I think it's important just for a very, very brief timeline, so the Court is completely aware of what happened in this case. Mr. Jackson first became superintendent of Proviso High School in July of 2000. That was under the original agreement. And that was for a time period of July of 2000 to June of 2003. There was a First Amendment, a Second Amendment. But what's really important for this Court is the Third Amendment and the Fourth Amendment. The Third Amendment was entered into on December 15th of 2003. And it extended the time period from July 1st, 2005 to June 30th of 2007. However, there was a Fourth Amendment that then was approved to the contract. And that Fourth Amendment was approved on November 15th, 2004. So prior to the time period for the Third Amendment. And that extended the time period from July 1st, 2007 until June 30th of 2009. Now, we think there's primarily two reasons why this Court needs to overturn the trial court's decision and why the trial court erred. And the first one specifically deals with the Fourth Amendment, how the Fourth Amendment failed to comply with the statute and those parameters I just discussed because the Fourth Amendment did not include adequate performance goals and indicators. And then secondly, which I'll talk about a little later, is the Third Amendment performance goals were not met. And therefore, the extension, the rollover of the Third Amendment into the Fourth Amendment was completely void and did not follow up the statute. But wasn't there a finding that the goals had been met by the Board? The Fourth Amendment to the contract, Judge Hall, what that states clearly is that the goals of the Third Amendment were met. That's what it states. But it's our position just because it states on the contract doesn't mean it's true. And the reason that is because it was a legal and factual impossibility for all the goals and indicators of the Third Amendment to be met. And I think it's a good point, and I'll address that argument first because I can tell it's something that probably concerns this Court. So you're saying that just because the Board said so, it's not necessarily so? Exactly. And here's why. As I indicated before, the school code is very clear that the contract shall not be extended or rolled over prior to its scheduled expiration date. The Third Amendment, which you're referring to... Is there an unless thing? Unless. You're skipping the unless. Unless, and Judge Lansing, I'm going to get to the unless because it's a very, very important point. Unless all goals and indicators were met. We have to really look and focus at the dates. Now, the Third Amendment was passed on December 15, 2003. The time period that extended this contract was July 1, 2005 to June 30, 2007. So the scheduled expiration was June 30, 2007. The statute dictates the contract cannot be rolled over unless all goals are met. Now, what are the goals? That's the first thing we have to look at. The Third Amendment didn't have its own individual goals. It used the goals of the original agreement. Now, those goals were to evaluate student performance, review the curriculum and instructional services, and report to the board. And those are goals. Do you agree? We will agree for purposes of argument. Those are goals. And here's the problem. Here's why they did not comply with the statute. Because it is impossible. And the testimony at trial came out that it is impossible. It's common sense. We all know that. In 2003, when the Third Amendment was passed, we have no idea how he was going to be able to evaluate student performance in 2004, 2005, 2006. He didn't review the curriculum and report to the board in 2003 about something that happened in 2004, 2005, 2006. You have to meet all the goals. And because that Third Amendment was for a time period in the future, you need to wait until the future actually happens. So when the board reviewed the Third Amendment, supposedly, to pass the Fourth Amendment, it was impossible to make the determination whether all goals were met because the time period hadn't even happened yet. The contract was for 2005 to 2007. The Fourth Amendment was passed in 2004. Counselor, aren't you dealing in semantics here? You're talking about a superintendent who needs to have some kind of continuity and the board needed to have some kind of continuity in order to retain that particular superintendent. Isn't that correct? And were they not evaluating him on the basis of the year that had passed? That's a great point, Rhonda. There does need to be some continuity. And they already had continuity because in 2003 when they passed this, he was already under contract until the 2007 school year. There was no emergency. But what the state law clearly dictates is you can't roll this over unless all goals are met. And when they extended him to the Third Amendment, and then all of a sudden a year later before the time period of the Third Amendment even comes into effect, then they extend him again, that's not what the law requires. That's not what the law dictates. There's a reason why the statute was amended, and it was amended to prevent this just automatically rolling over things from year to year to year. They was currently under a contract that hadn't even taken place yet. In 2004, when the Fourth Amendment was passed, the Third Amendment hadn't even started yet. There were still two school years on it, almost three, four years. So there does need to be continuity. And I'm not saying it's not the board's position that they had to wait until about the Third Amendment was expired, but how about let's wait until the Third Amendment even starts before we roll over and enter in a new contract. And that's why the Fourth Amendment is void as it relates to the Third Amendment. Would you tell me specifically the error that the board committed in indicating that the goals had in fact been met? Specifically, the errors that they made, Your Honor, were the fact that they did not wait until the time period that the Third Amendment dictated. The Third Amendment dictated the time period. So it's simply a question of timing in your estimation? Yes, it is, because the time period was from 2005 to 2007. That's what the Third Amendment was for. They at least needed to wait until, let's say, maybe half that the time period was done, three-fourths of it, because how in the world can you evaluate whether all the goals were met in the Third Amendment if you're not waiting until the time period even starts? So that's the problem. They just rolled it over without having any finding, and that's what the law prevents. The law states that all performance goals have to be met. And in 2003, it was impossible for the board to determine whether those performance goals in 2004, 2005, and 2006 were met. And that is the problem, despite the fact that it says, as you point out there, Judge Halter, despite the fact that it says the Third Amendment goals were met. It was impossible for them to be met. Now, besides that problem, there's another big problem, and that's with the Fourth Amendment itself. The Fourth Amendment does not meet statutory requirements because it fails to enumerate goals and indicators that measure student performance and academic improvement that are required by the school code. Attached to the Fourth Amendment, there were certain goals. And here are the goals. Increase test scores. Adhere to a five-year financial plan. Promote parental involvement. Assure students are ready for life. Increase professional goals. Reduce discipline referrals. Some of those goals aren't even linked to academic improvement as required, but those goals aren't even measurable. How do you measure if a student is ready for life? How do you measure increasing professional growth? These are just purported goals, and that's not what the code requires. There has to be indicators. There has to be some sort of indicator to measure student performance. Here in the Fourth Amendment, there were none. So there was no way to indicate, there was no way to evaluate whether these goals were actually being met. Who actually drafted the Fourth Amendment? The Fourth Amendment was drafted by Mr. Jackson, his attorney. The prior amendments were drafted by the Board's counsel. And is that a distinction with a difference in your estimation for our consideration or not? You know, quite frankly, I don't think it's necessarily a big distinction. The Board's signed the contract. There's no dispute about that. We're trying to avoid it. Was it reviewed by counsel? The testimony at trial was a little unclear as to actually what counsel was there. That was a factual determination that the judge determined that there was counsel present. He said there was nothing wrong with it. But I think it really doesn't matter who drafted it because, quite frankly, whoever drafted it did not comply with the law. There was no dispute about it. It was Jackson's attorney. But if you look through all the contracts, what's set out in the school code, the actual goals, they're not properly written in the Fourth Amendment, quite frankly, for any of them, specifically because you need indicators. And that's what the Fourth Amendment is missing out on. There is no indicator to determine if they're meeting the goals. For example, the goal of number four in the Fourth Amendment assures students they're ready for life. Okay, if that's the goal you want to put in, they're fine. But let's have some indicators. How do we measure that? We need to have some sort of measuring stick. And one proper way to do that would have been to put in there, increase the number of graduates, decrease dropout rates, accelerate the number of students that are applying to college. But things like that aren't in the contract, so you have no way to measure it. You mean decrease dropout rates, I'm sure. Yeah, I'm sorry. But we need some sort of thing, Your Honor, to measure that these goals are actually being met. It's just not enough to say promote parental involvement. You need a measuring stick. That is what the legislator wanted when they made the change to evaluate contracts based on performance. Anyway, the goals, as I stated before, these goals, increase professional growth, they don't assure students they're ready for life. We need to relate these goals directly to student performance. That's what the code requires. Can I just interrupt you? Doesn't the statute, though, leave that explicitly to the board to determine? The board has tons of latitude, as you correctly point out. They have a lot of latitude. But with that latitude, there's got to be some sort of measuring stick. And when you have general goals like that that don't directly relate to academic performance, and then you don't have any measuring stick, then the goals fail. Why can't the statute provide, I'm sorry, does the statute require a measuring stick? The statute requires the goals and indicators of student performance. So each performance-based contract shall include the goals. So we have goals, but we don't have indicators. We did have some sort of indicators. So those are what's used to actually measure the goals that are being met. So I do believe, yes, it does require some sort of measuring stick, and that's why they use the term indicator in the statute. And I think one way to really look at the legislative intent, I think it really fits our argument and our position here, is because the previous statute, what happened in those cases, was if a contract wasn't renewed within a year, and the school board did not give notice that they were not going to renew the superintendent's contract, it automatically renewed and renewed and renewed. But in 1998, when the statute that's at issue today was passed, they changed that. Failure to give notice prior to this statute automatically extended a contract for one year. We no longer have that. Now we have references to goals and performance indicators, and those have to be met. So when the legislator changed the law, they were sending a message to school boards that you needed to have goals, you needed to have indicators, you needed to look at those things, and we don't want to just automatically renew any contracts like we have in this case, where the board decided, you know what, he's ordered a contract for two more years. The board is going to give him two more years without looking to see how he does in 2005, 2006, 2007. Here's my problem. Why can't the goals in and of themselves, even if they are admittedly somewhat broad, broadly drawn, why can't those goals provide a measure of performance and effectiveness? And to use your two examples, promoting parental involvement, assuring students are ready for life. Why can't those two goals, which are admittedly broadly drawn, provide the necessary measurement? If they would have some indicators with that, then I could see that would follow the statute and would be okay if there were some indicators. For example, promote parental involvement. That would have been the goal. Underneath the goal in the contract, they have an indicator. Send mailings to students' families about activities at the school. If a student fails to appear two days in a row for school, call up the family. If there be some indicators to measure it, without those indicators, this goal is just something that just sits out there, and there's no way for the school board to determine, pursuant to the statutes, whether ever the goal has been met. So that's the problem. The goal in and of itself may be okay, but without that indicator, it's just sitting out there, promote parental involvement. What does that really mean? You need some sort of measuring stick, and that's why the statute uses the term indicator. Counsel, you need to save some time for rebuttal. Yes. I appreciate your time. Thank you very much. Appellee. Good morning, Your Honors. Counsel, my name is Michael Braun, and I represent the Appellee, Gregory Jackson, in this matter. Your Honors, this is a desired outcome in search of a legal theory to support it. The board wanted to be rid of the Fourth Amendment that it entered into with Gregory Jackson, and it has searched desperately for the last four years to find a legal theory on which to get rid of that contract that it wishes it hadn't entered into. It started off this case with the theory that all of the contracts, the original contract and all of the amendments, were void. It's not complying with the school code. And the deposition testimony in this case didn't support that theory, and you've heard counsel this morning acknowledge that the original contract and the amendments had sufficient goals and that there isn't an issue about their satisfaction of the school code requirements. The board filed the first amended complaint when the deposition testimony didn't support its original theory, claiming that the board didn't deliberate long enough in evaluating the performance of the Third Amendment and entering into the Fourth Amendment. That theory also fell apart legally and factually and was rejected by the trial court by Judge Billick on the summary judgment motion. That then caused a new theory to be interjected into the case by the board, which is this theory that you've heard today that somehow the Third Amendment wasn't adequately performed before the Fourth Amendment was entered into. So we've had this constantly shifting search by the plaintiff to find a legal theory on which it can get its desired outcome. Each of those theories is flawed, as is the theory that the trial judge, Judge Billick, rejected after hearing evidence below. Initially, Your Honors, what I'd like to talk about is the goals of the Fourth Amendment are not just Exhibit A, which, by the way, are quantifiable goals, at least in part. Increased test scores is a quantifiable goal. How do you quantify making sure that a student is ready for life? Your Honor, you can do things such as, first of all, the board sets the goals under the school code. The board has the discretion as the elected officials for the school district to decide what the goals are and how to measure them. But if you want to talk about how you measure, assure students are ready for life, you can look at things like dropout rates. You can look at things like college admittance for students in the district who go on. You can look at things like how many kids are graduating from your high schools in four years. But aren't those things covered under earlier goals? I mean, within that same amendment, aren't those the dropouts? Your Honor, if you put goal four out of the goal, assure students are ready for life, and you relied upon the other goals, increased test scores, adhere to a five-year financial plan, promote parental involvement, reduce discipline referrals, that's an adequate list of goals under the school code, and it's certainly something adequate for the school district to decide in the exercise of its discretion as the elected officials charge with the supervision of the school district that that's what they want the superintendent to accomplish. So the fact that there may be one goal that is a little more amorphous than other goals shouldn't be a problem here. Counsel, I think you could actually take the assure students are ready for trial and fold the other goals into it. I won't object to that characterization either, Your Honor. But certainly there are goals here. And I would note that the Fourth Amendment is an amendment to the original contract, and it specifically says that the other provisions in the original contract are still good and valid. So we still have the goals from the original contract as part of the goals of the Fourth Amendment. These are supplements to the original goals, which the board has acknowledged are sufficient under the school code. It's the reporting and making recommendations about issues like curriculum and student performance that, again, the board hasn't challenged as being adequate, or at least hasn't challenged since the denial of its motion for summary judgment are adequate. Goals under the school code. With respect to this whole issue of the Third Amendment, Your Honor, there is not a single person who testified, a single board member, current or past, who testified that the Third Amendment started at some date later than the date that the Third Amendment was entered into. What counsel has argued is because the Third Amendment extends the length of the contractual arrangement between the superintendent and the school board, that that's the start date. That's a nonsensical result. And Judge Billett rejected it below after hearing evidence. But significantly, there is not a single board member who testified. I thought he was saying that because the dates were beyond, they were in 2007 and I guess ultimately 2009, because they had not yet come into existence and it was impossible for the superintendent to be evaluated on the basis of years and goals that had not even come into existence. Your Honor, I understand the board to be making two arguments. One argument, which I don't think was made below, is that the Third Amendment hadn't even begun yet at the time that the Fourth Amendment was approved. And there is not a single board member who testified that that was a factor, that that's how they viewed, that's how they interpreted the starting date of the Third Amendment. It's a nonsensical result. But the board members who voted against the Fourth Amendment did so not because they found Mr. Jackson's performance under the Third Amendment to be inadequate, but you have one who said, I wanted to see test results. We didn't have those yet. We have one board member who didn't vote for it because she thought it was just too early to vote for it. But we don't have any board member testifying that the time period for the Third Amendment had not yet commenced at the time that the Fourth Amendment was approved. Now, with respect, Your Honor, to the second part of your question about the future performance, there was a lot of testimony about that at trial also. And what the trial judge, Judge Billick, concluded was that between the Third Amendment and the Fourth Amendment, Mr. Jackson had done a substantial amount of work on revamping curriculum, proposing and implementing plans for summer school programs, small learning communities, a variety of other things. There were two lengthy exhibits that laid out these plans, which the board said we looked at, we reviewed, we had in front of us, we considered it, and decided to enter into the Fourth Amendment. And the majority of the board said we found that these plans met his goals and were sufficient for meeting his goals, and therefore felt that we could find that the goals were satisfied and approve the Fourth Amendment. And what's your response to Mr. Zimmer's argument that the board was just clearly in error when it made that determination? Your Honor, I... Or a mistake. Yeah, no, right. There's just no basis in the record that the board was clearly in error there. And Judge Billick, who sat there patiently for four days of testimony, saw and heard these witnesses and reached the same conclusion. These board members were justified in finding and exercising their discretion as the elected officials for that school district that these were appropriate goals, that these were appropriate steps to complete those goals, and that those goals had been met. And that's what the board members found. And again, there's no basis, Your Honors, for the trial court or for this court to say you abused your discretion in finding that this court didn't qualify as meeting the goals. I'm sorry, Judge, it looked like you had a question. I'm listening attentively. In short, Your Honors, this case was given careful consideration on cross motions for summary judgment by Judge Billick. There's a well-reasoned, written opinion following a four-day bench trial where Judge Billick has reviewed the evidence carefully and with great accuracy. There's no basis for overturning Judge Billick's conclusions, either factual or legal. The school code has been complied with. The board properly found that Mr. Jackson had performed under his contracts. And again, this is nothing more than a change of heart by a board that did one thing and several months later decided that they now had the fourth vote that they needed to oust Mr. Jackson and they wanted to be rid of his contract. And that's all this case is about. No matter how much you want to dress it up in the school code and all this other stuff, this is how do we get out from paying this gentleman with whom we have a contractual obligation to pay. If there's no other questions, thank you, Your Honor. Why did they have a fourth vote? Was there an election in between? The Fourth Amendment was voted on in November. In April, there was a four-to-three vote. In April, there was an election that changed the composition of the board. And instead of having four votes in favor of Mr. Jackson's superintendency, there were now four votes opposed to Mr. Jackson's superintendency. And what's in the record also, Your Honor, is that the board president, who's a school board lawyer, doesn't represent this school district, but he practices in the area of school law. He had, to a question that you asked earlier, Your Honor, the contracts approved in November, it's not signed by the school board president until December. There's no indication what he did with respect to having a board's counsel review it during that three-week period. But he clearly testifies, I didn't try to strike language that I found, including the finding that the board's findings that the contracts have been complied with and the goals have been met. He didn't try to strike that language. He didn't try to alter that language. He didn't do anything with respect to that language in that three-week period between when the board action took place and when he actually signed the contract. What we also have in the record, Your Honor, to your question about the change in the board composition, is the board election in April changes the composition of the board. The board president puts on the agenda for April the issue of Mr. Jackson's Fourth Amendment. He then testifies, I didn't have board counsel review it. I took it off the agenda. I didn't put it back on the agenda until July. So we've now gone from November when the original board approves the contract 4-3 to July when there's a new board in place that decides to revoke the contract, void out the contract by a 4-3 vote. And we have the board president saying, I never got a formal opinion from board counsel during that seven or eight-month period of time saying that the contract didn't comply with the statute. And certainly knowing that the board members relied upon board counsel, I probably should have, I absolutely, I believe is the word he used, should have done that, but I didn't do it. Any other questions? Thank you, Your Honors. Rebuttal. There's been one overriding legal theory driving the board throughout this, and that's that the Fourth Amendment is null and void because it violates 10-23.8 of the school code. So why is this rise to the level of error, which is very high, that we should overrule Judge Billick's determination in this case? Two reasons, Your Honor. The first is because when you look at that Third Amendment, when you look at the Third Amendment, that Third Amendment was passed in 2004 for the time period 2003 to 2005-2007. Then a year later, in 2004, before the Third Amendment starts, that time period is crucial because the statute dictates that all performance goals must have to be met. And it is impossible, as we all know, in 2004 to determine if somebody met their goals in 2005, 2006, 2007. Everybody that testified in court agreed with that. It's a pretty easy question. And because of that, and because the statute states that all performance goals must have been met, and because it's impossible in 2004 to meet a goal for 2005, 2006, 2007, that is why it rises to the level of error. The statute's out there. We have the statute. It doesn't make a difference, the fact that these parties entered into the agreement voluntarily. It doesn't matter that the vote was 4-3 and they passed it. What matters is the statute because, as you know, a contract that is in violation of the statute is void. And the Fourth Amendment, because the Third Amendment was not properly rolled over because the goals weren't met, that is why Judge Bilk was in error. Should we give any moment to the fact that there was a change in the composition of the board in April? I think what you should pay real attention to, and I cite this in my brief, is that in December, when the Fourth Amendment was passed, it was election season. School board election was coming up. So that would maybe explain why Jackson and his allies, the four votes he had, rushed to get this Fourth Amendment on, despite the fact that in 2004 he was still under contract until 2007. And why that's important is because, as I talked about this entire morning, is we have a code. And the code has certain rules you have to follow. And you have to make sure those performance goals have to be met. So what you should pay attention to is why all of a sudden the Jacksons under contract for 2007, why is this board all of a sudden rushing to get him two more years? Why? Because a school board election was coming up, and they were worried about their ally. They were worried about their friend's future. So let's try to get him two more years. Let's ignore what the statute says. Let's ignore the fact that he has two more years left on his contract. Let's get him to two years now and extend him out from 2007 to 2009. So that's why you should pay attention, Your Honor, as to the elections that occur. And when the new board came in, what did they do? They eventually, it was on the agenda one time, it wasn't reviewed with counsel, it got on the agenda a couple, I think one or two meetings later, and at that point, that's when they decided not to honor the Fourth Amendment. So I think you should pay attention for that reason, and particularly, how did it even get on there in the first place? Why did it even get on there? I thank you for your time, and are there any more questions? Counsel, I'm just curious about the continuity between school boards. Isn't the district entitled to be able to rely on what one board does from season to season, from election to election? I mean, it would seem to me that continuity would be of the utmost, and that what has happened by one board, all of a sudden you change it as soon as a new board comes in? Well, you can have some continuity, because there's no doubt that that statute that I've referenced, you can have a contract with a superintendent for five years. So the law does provide continuity. You can't have a short contract. You have to make sure all performance goals were met. So that is the problem, is they didn't wait to see what happened on the Third Amendment. Mr. Jackson already had a contract until 2007, and in 2004, they extended him out two more years. They didn't have that option. They didn't have the right to do that. When they gave him one of the extensions, let's say, for example, at the end of 2002, at that point, they could have sat down and reviewed everything he did, and they could have given him a five-year contract. But they didn't do it that way. They gave him these short contracts, and because of that, and because of this two-year extension they gave him before he had even started the time period of 2003, the contract was void. So the law doesn't offer continuity, and they could have done that. You're saying they could have extended it to 2008, but not 2009? The problem is when they extended the Third Amendment on the Fourth Amendment, that time period had not started yet. And the law says that all performance goals and indicators in the contract have to be met. And because those contracts weren't, those goals weren't met at that time, they couldn't extend it anymore. And that was a problem. But just looking at the time frame, the five years, how far could they have extended the contract under the five years? If, when they extended the, when 2004 went ahead, they couldn't extend it at all because the 2003 time period hadn't ended. No, no. In 2004, plus five equals 2009. Correct. But the problem is, in 2003, they didn't give him the five years then. They gave him two years. But they're not required to give him the maximum, isn't that correct? No, they're not required to. But they can give him up to five years. Correct. I just have one question because of your last comment. You were saying that the goals had to be met basically before they extend a new contract. Correct. But the original contract was from 2000 to 2003. And before the original contract ended, they had made the First Amendment and the Second Amendment to the contract. And you're not, yet you're not challenging that. And then when they have the Third Amendment to the contract, which is in 2003, it seems to me from what I've reviewed, everyone said that contract began in 2003. And if you divide it up in terms of performance as opposed to the superintendent's extension of his contract, we have a performance that begins in 2003. As soon as the Third Amendment comes into play and he starts working on the goals that he has set for that Third Amendment before the Fourth Amendment comes into play, the only difference is that his contract is extended. It's not like the goals stand still. And that's an excellent point. And here's the difference. And the prior amendments, what had happened is the First Amendment, he's working, that time period had already started. He starts doing some work, he starts working on the goals. During that time period, they meet, they say, you know what, you're a year into the contract, for example, you're doing a good job, we're going to extend you now. But what makes the Fourth Amendment so much different, and we talk about it in, I believe, our reply brief, is the Fourth Amendment, when they extend that, that time period of the Third Amendment hadn't even started. That 2005 to 2007 time period of the Third Amendment had not even started. And they went ahead. That's what I'm asking. Can't you separate that? When the Third Amendment is filed, I think it's December of 2003, there's goals that they've set out, including, I think, opening a new school. And certainly a school can't be opened in a day. And they extend his contract to 2007. Can't the goals and his contract be separated? Before they can move, before they can extend that Fourth Amendment, there's got to be a determination that those goals that are in the Third Amendment be met. That's the problem. The problem was with extending the Fourth Amendment without proving that the goals were met. So when you take those goals from the Third Amendment, you take them from the Second Amendment, any of them, if there's not a finding that all those goals are met, then you can't extend it. So I think that's the problem, and that's what the parties did wrong, is they didn't make sure those goals that were in the contract were met. Thank you, counsel. Thank you very much for your time. Thank you both for your arguments. The matter will be taken under consideration.